JAMES A. RALSTON, by his guardian *ad litem*, plaintiff in error, *vs.* BEVERLY THORNTON, administrator of James A. Ralston, deceased, and NATHAN BOZEMAN and WIFE, defendants in error.

In December, 1864, Ralston died intestate, leaving a widow and three minor children as his heirs-at-law. In March, 1865, one of the children died, and in April, 1866, another of the children died, leaving the widow and the other surviving child as their heirs-at-law. The property of Ralston the first decedent, remained in the possession of Thornton, his administrator. In February, 1867, the widow intermarried with Bozeman. On a bill being filed by Thornton, the administrator of Ralston, for direction: *Held*, that the widow was entitled to inherit one-half of the estate, as the heir-at-law of her deceased husband and children, notwithstanding her intermarriage with Bozeman before the property had been reduced to possession by her, and that the marital rights of the husband did not attach to any part of the property under the provisions of the Act of 1866.

Bill for direction, &c.    Decided by Judge COLE.    Bibb County.    Chambers.    September, 1867.

Thornton filed a bill for direction, &c., against Nathan Bozeman and his wife, and James A. Ralston, containing the following averments:

On the 12th of December, 1864, James A. Ralston, of Bibb County, Georgia, died, leaving a very large estate of realty, personalty and choses in action. He left, surviving him, his widow Aurelia L. and three minor sons, Henry G., David and James A. Ralston.

Thornton administered on his estate in January, 1865, and took the whole of it into possession.

Henry G. died on the 30th of March, 1865, aged but nineteen years, and David died in April, 1866, before he attained his majority. These deceased sons left no wives nor issue, and no debts, but neither of them has ever had an administrator.

In February, 1867, the widow was married to Dr. Nathan Bozeman. He, for his wife, demands one-half of said estate from said administrator, but the minor, James A. Ralston, claims that under the laws of distribution of Georgia, he is entitled to three-fourths of the estate, and has notified the administrator not to settle with Bozeman.

The magnitude of the éstate, and the changes incident to the laws of Georgia in these revolutionary times, make it proper that the administrator should be directed by the Court how to distribute the same.

By the answers of Bozeman and wife and the guardian *ad litem* of said minor, many matters are set forth in no wise pertinent to the main and indeed the only question made by this record.

In anticipation of their marriage, Nathan Bozeman and Aurelia L. Ralston entered into a contract, to-wit: on the 7th of February, 1867, which, after reciting their respective residences, their contemplated nuptials, and that Aurelia L. " is seized and possessed, in her own right, of a considerable estate both real and personal, consisting of lands, money, stocks and other things, as one of the heirs and distributees of her late husband, James A. Ralston, deceased, and as heir and distributee of her two children, Henry G. Ralston and David Ralston, deceased," stipulated that, in consideration of said marriage, all of said estate should " remain and continue her separate estate, and not vest, by marriage, in her said intended husband, the said Nathan L. Bozeman, or be in any way subject to his alienation, or to the payment of his debts now owing or hereafter to be contracted by him; that all and singular the estate and property aforesaid, belonging to her, the said Aurelia L., or which she is entitled to, or may accrue to her as aforesaid, shall be subject to her disposition by will, and should she die without having a will, in that event one equal half of all the property aforesaid shall go to and vest absolutely in her said intended husband, the said Nathan Bozeman, if he is then living, and the other equal half of the same shall go to and vest absolutely in Mrs. Mary A. Lamar, the mother of the said Aurelia L.: " That said property shall be managed during the contemplated coverture, by the said Nathan Bozeman, and its rents, issues and profits shall be applied to the support and maintenance of her, the said Aurelia L., of him, the said Nathan Bozeman, and the child or children of the marriage, if any, and to the education of such child or children; and should

Ralston *vs.* Thornton, Adm'r, and Bozeman and Wife.

the rents, issues and profits of said property amount at any time to more than what is sufficient for the purposes aforesaid, in that event the surplus shall be invested by him, the said Nathan Bozeman, according to his best discretion, and such investment shall be subject to all and singular the uses and limitations herein declared relative to the original property ; and that the said Nathan shall, with the consent and approval of the said Aurelia L., have power and authority to sell any part of the estate or property herein before described, for the purpose of reinvestment, when he and the said Aurelia L. shall consider it for the best interests of the estate so to do ; and in the event of the sale and investment of the same, the reinvestment, when made, shall be subject to all and singular the uses and limitations herein declared and set forth touching the original property."

The estate was all in the hands of the administrator undivided, and there were no debts against it.    It was conceded that up to the time of the marriage of Aurelia L. and her son James A., they were equally interested in said estate of James A. Ralston and the two dead sons, but this minor claimed that her marriage gave him three-fourths instead of half.

By order passed in term time, the question was heard at Chambers, and then the Chancellor decided that the son, James A. Ralston, was entitled to only one-half of the estate, and that Bozeman, as trustee for his wife, should take the other half.

This ruling of the Chancellor is brought up for review.

B. HILL, for plaintiff in error.

COBB & JACKSON, and the NISBETS, for defendants in error.

Ralston *vs.* Thornton, Adm'r, and Bozeman and Wife.

WARNER, C. J.

This was a bill filed in the Court below by Thornton, the administrator of James Ralston, for direction, upon the following statement of facts.    In December, 1864, James Ralton died intestate, leaving a widow and three minor children as his heirs-at-law.    In March, 1865, one of the children died, and in April, 1866, another of the children died, leaving the widow and the other surviving child as their heirs-at-law.    The property of James Ralston the first decedent remained in the hands of Thornton, his administrator.    In February, 1867, the widow intermarried with Dr. Bozeman, before there had been any distribution of James Ralston's estate by the administrator thereof.    The question made in the Court below upon the foregoing statement of facts, was as to what part or portion of the estate of James Ralston his widow was entitled to under the laws of this State, (she having intermarried with Bozeman before distribution thereof,) either as his heir-at-law or as the heir-at-law of her two deceased children.    The Court below held and decided that the property of James Ralston, in the hands of his administrator, should be equally divided between Mrs. Bozeman and the surviving minor child—that each take one-half of the entire estate.    This decision of the Court was excepted to, and is now assigned for error here.

The plaintiff in error mainly relies upon the provisions of the Act of 1845, which is substantially incorporated in the first Code, but *omitted* in the Revised Code.    The 2453d section of the first Code declares, " Whenever any *feme covert*, having a child or children by a former marriage, is or becomes entitled to property by inheritance at any time, or devise, antecedent in date to her last marriage, and not in trust, *the possession of which is not obtained prior to such marriage*, such property shall not belong to the husband of such *feme covert*, but shall be equally divided between all the children of such *feme covert* living at the time when possession is obtained, and such *feme covert*.    The portions of such *feme covert* and her children by her last husband, shall alone be subject to be reduced

to possession by, and the title vest in, such husband." In Mathews vs. Bridges, 13th Ga. Rep., 325, this Court held that when a widow was entitled to a distributive share of an estate as a *feme sole*, but married before reducing the property to possession, her child by a former husband was entitled to a distributive share thereof, under the Act of 1845. Roby vs. Boswell, 23d Ga. Rep., 51. Had there been no change of the law of this State upon this subject *prior* to the marriage of the widow with Bozeman, the Act of 1845, and the construction of it by this Court, would have controlled the question in favor of the plaintiff in error. The Act of 1845 was directed against the *marital rights* of the husbrnd of the second marriage. If the property had been reduced to possession, to which the widow was entitled, at the time of her marriage, then, as the law stood, it would have become the property of the husband. The object of that Act was to *cut off* the marital rights of the husband to the property of his wife, *which had not been reduced to possession*, to the prejudice of the wife's children by a former marriage, and such was the interpretation given to it by this Court.

But how stood the law in relation to the *marital rights* of the husband, at the time of the marriage of the widow with Bozeman in this case? By the Act of 13th December, 1866, his marital rights to the property of his wife, whether reduced to possession or not, were entirely taken away ; he could not assert his marital rights over her property to the *prejudice* of her children by a former marriage. The Act of 1866 declares, " That from and after the passage of this Act, *all the property of the wife* at the time of her marriage, whether real, personal, or choses in action, *shall be* and *remain the separate property of the wife*, and that all property given to, inherited or acquired by the wife during coverture, shall vest in and belong to the wife, and shall not be liable for the payment of any debt, default or contract of the husband." The second section of the Act *repeals conflicting laws.* The manifest object and intent of this latter Act was to defeat and cut off the *marital rights* of the husband to his wife's property, whether real, personal or *choses in action*, not only such

as she had *in possession,* but such as she had *the right to re-duce to possession.* The Act expressly declares that *all* the property of the wife shall be and remain her *separate property.* Now it is conceded that if the widow in this case had remained a *feme sole,* she would be entitled to inherit one-half of the estate, as the heir-at-law of her deceased husband and children. At the time of the passage of the Act of 1866, her right to this property was fixed and vested by *operation of law;* if she did not have the actual possession of it, her *legal right* to reduce it to possession was indisputable—her right to inherit this property as the heir-at-law of the deceased parties, did not depend upon the *contingency* of reducing it to possession, nor does the Act of 1866 restrict her right as to its enjoyment, upon *that contingency*—and this being so, her intermarriage with Bozeman in February, 1867, did not *defeat* any of her previously acquired rights thereto under the public law of the State.

The Act of 1866, in our judgment, *repeals* all prior laws which conflict with the declared object and intention of that Act in regard to the property of married women, as well that to which they were entitled at the time of the marriage, as that acquired by them afterwards during coverture, and to hold in this case that the right of the widow to this property as the heir-at-law of her deceased husband and children, de-pends upon its *reduction to possession* by her before or after marriage, would be in conflict with that Act.

Our conclusion and judgment, therefore, is, upon the facts of this case and the existing law applicable thereto at the time of the marriage, that, inasmuch as the widow was a *feme sole* at the time she inherited this property, her right and title to the inheritance thereof vested in her by operation of law; as such *feme sole,* she inherited the property of the deceased parties in her *own right,* and this being so, the Act of 13th December, 1866, secured to her *all* the property she had inherited from her deceased husband and children, as her *separate property* at the time of her intermarriage with Boze-man in 1867, whether she had reduced the same to possession or not; that the fact of her becoming a *feme covert* in 1867,

did not *defeat* any of her rights to the property acquired by operation of law before she became a, *feme covert,* and which was secured to her by the Act of 1866; that Act not requiring that the property should be reduced to possession, but expressly *repeals* all laws in conflict with it; that the Act of 1866 is *in conflict* with the 2453d section of the old Code, so far as the reduction of the property to possession is necessary to perfect her title thereto, or to affect in any way the *marital rights* of her husband, and providing for the children of a former marriage *against those marital rights;* that she is entitled to inherit one-half of the estate in as full and ample manner as if she had remained a *feme sole,* notwithstanding her marriage in 1867. It was her separate property before and at the time of her marriage, and is her separate property now, under the provisions of the Act of 1866.

Let the judgment of the Court below be affirmed.